

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed October 9, 2020**

**United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| JOSE LUIS OROSCO and | § | CASE NO. 19-60038-rlj13 |
| VIVIAN GARCIA OROSCO, | § | |
| Debtors. | § | |

## <u>MEMORANDUM OPINION</u>

Jose and Vivian Orosco, the Debtors, seek the Court's approval of a late-filed proof of claim. They filed this claim as an "amendment" to Ally Financial's secured claim, which Ally Financial filed one day late. While tardy claims filed by debtors under Rule 3004 may be deemed timely by the Court for excusable neglect, excusable neglect is a high standard that the movant has the burden of proving.[1] *It is not a remedy that can be taken for granted.* Because the Debtors here have not even mentioned excusable neglect in their motion, their motion must be denied. The circumstances of the case, though, warrant a rare allowance of *the creditor's* late-filed claim; thus, Ally Financial's claim will be deemed timely and paid through the Debtors' chapter 13 plan.

---

[1] "Rule" refers to a rule of the Federal Rules of Bankruptcy Procedure.

1

## I.

Jose and Vivian Orosco filed chapter 13 at the end of April 2019. The bar date for creditors to file proofs of claim was July 9, 2019, while government creditors had until October 28, 2019. These deadlines were noticed to creditors on May 3, 2019. Doc. No. 8. But then, on May 7, the Debtors' chapter 13 case was dismissed. Doc. No. 10. The Debtors filed a motion to vacate the dismissal and to reinstate their case. The case was reinstated on June 28, 2019, more than 50 days after dismissal. Doc. No. 24.

On July 10, 2019, one day after the bar date, Ally Financial filed its proof of claim for $20,083.53, secured by a 2016 Chevrolet Sonic valued at $16,000. Claim 11-1. A week later, the Chapter 13 Trustee filed a Notice of Claims Filed and Not Filed and served the notice on the Debtors' attorney. Doc. No. 29. The first claim listed on the notice is Ally Financial's with a designation that the claim was filed late. By Rule 3004, the Debtors had until August 8, 2019 to file a claim on behalf of non-government creditors, such as Ally Financial.

The Debtors' chapter 13 plan was approved in early November 2019. Doc. No. 39. The plan treats Ally Financial's claim as if it had been timely filed, though the confirmation order designates the claim as late-filed and to be paid only after all timely and allowed claims have been paid. On June 4, 2020—almost ten months after the Debtors' bar date for filing claims— Debtors filed a proof of claim, designated as an amendment, on behalf of Ally Financial. Claim 11-2. This proof of claim is identical to the proof of claim filed by Ally Financial. Debtors then filed a motion to allow the claim so that it could be paid as provided for in their plan. Doc. No. 42. The motion states that allowance of the late-filed claim would be in the best interests of the Debtors and their creditors.

The Debtors' confirmed plan bifurcates Ally Financial's claim into a secured claim of $16,000, the value of the Sonic, and an unsecured claim of $4,055. The Debtors purchased the Sonic more than three years prior to filing bankruptcy. *See* Claim 11-1, Attachment 1. They can thus bifurcate the debt under § 1325's hanging paragraph.[2] They propose to fully pay the secured portion, the $16,000, plus interest; the unsecured part, the $4,055, is paid pro rata with other unsecured debts.

## II.

"A proof of claim is a written statement setting forth a creditor's claim." Fed. R. Bankr. P. 3001(a). While the Rules require creditors with unsecured claims to file proofs, a secured creditor may, but is not required to, file a proof of claim. *See In re Norton*, No. 15-10046, 2017 WL 354320, at *2 (Bankr. N.D. Tex. Jan. 24, 2017). There is no requirement to file a claim because "liens generally pass through a bankruptcy unaffected," but, nevertheless, "if a secured creditor wants to be paid under a debtor's chapter 13 plan, it must file a proof of claim." *Id.*; *see also In re Shank*, 569 B.R. 238, 248 (Bankr. S.D. Tex. 2017).

Rule 3002(c) provides that, in a case under chapter 7, 12, or 13, a proof of claim is timely filed only "if it is filed not later than 70 days after the order for relief." The filing date of the case constitutes the order for relief. *See* § 301. The claims' bar date "is to be strictly observed by all parties since, under the provisions of Fed. R. Bankr. P. 9006(b)(3), the Court is given authority to extend that deadline only if a claimant demonstrates that its claim falls within one of the [seven] exceptions specifically enumerated by Rule 3002(c)." *In re Kelley*, 259 B.R. 580, 583–84 (Bankr. E.D. Tex. 2001) (at the time of this decision, there were only five exceptions; the Rule has since been amended).[3]

---

[2] "§" refers to 11 U.S.C.
[3] The seven exceptions to the general rule that creditors have 70 days to file a proof of claim are:

"If a creditor does not timely file a proof of such creditor's claim, the debtor or the trustee may file a proof of such claim." § 501(c). Such filing must be made "within 30 days after the expiration of the [creditor's] time for filing claims." Fed. R. Bankr. P. 3004. Rule 9006(b)(1) provides the general rule that the court, in its discretion, may extend deadlines provided by the rules, including on requests made after the deadline has expired if, in addition, the failure to timely act was the result of excusable neglect. Subsection (b)(1), however, is subject to subsections (b)(2) and (b)(3). Subsection (b)(2) identifies rules under which the time to take action *cannot* be extended. Subsection (b)(3) identifies other rules that exclusively govern the court's authority to enlarge time. Among the "other rules" referenced by subsection (b)(3) is Rule 3002(c); Rule 3004 is *not* referenced. Rule 3002(c) does not authorize an enlargement of time. And neither does Rule 3004, but given that such rule is not the exclusive basis for time enlargement, debtors may invoke the provision of 9006(b)(1) that allows for enlargement of time for cause and a showing of excusable neglect. *In re Norton*, 2017 WL 354320, at *3. Many courts have come to this same conclusion.[4]

---

1) for claims of governmental units;
2) for claims of an infant or incompetent person;
3) for unsecured claims that arise as a result of a judgment for the recovery of money or property;
4) for a claim arising from the rejection of an executory contract or lease;
5) for claims in a noticed no-asset case that becomes a potential case with assets;
6) for a creditor that was not provided sufficient notice of the case;
7) for the holder of a claim secured by the debtor's residence to submit attachments to its proof of claim in compliance with Rule 3001(c)(1) and (d).

Rule 3002(c).

[4] *Matter of Burns*, 566 B.R. 918, 921–22 (Bankr. N.D. Ind. 2017) ("If a creditor fails to file a timely claim, the debtor may do so on its behalf, within the 30 days following the creditor's deadline. Not only can the debtor file a claim for a non-filing creditor, the debtor can seek a belated extension of its own deadline 'on motion . . . where the failure to act was the result of excusable neglect.'" (citations omitted)); *In re Branch*, 228 B.R. 831, 834 (Bankr. W.D. Va. 1998) ("Only the debtor and the trustee have the ability to extend the time limit of Rule 3004 [for excusable neglect]."); *In re Morgan*, No. 18-24459, 2019 WL 548532, at *4 (Bankr. E.D. Wis. Feb. 11, 2019) (stating that a debtor or trustee may seek an enlargement for proof of claim bar date upon showing cause and excusable neglect); *In re Sprague*, No. 12-41099, 2013 WL 6670576, at *3 (Bankr. D. Idaho Dec. 18, 2013) (same).

**A.**

The Court addressed this issue in 2017 in *In re Norton. Id.* There, the Court determined that a late-filed claim by a debtor on behalf of the creditor could be allowed, or deemed timely filed, when there was excusable neglect under Rule 9006(b)(1). The debtor had a secured car loan through the local credit union. The credit union never filed a claim in the case. The debtor's plan provided for payment of the claim through the plan, which was confirmed. For more than a year, the chapter 13 trustee paid the claim in accordance with the plan. The trustee, upon realizing that the claim had never been filed, refused to pay it any further. The debtor then filed a claim on the credit union's behalf and moved to have it deemed timely filed. The Court found that there was excusable neglect because of extenuating circumstances—a rare procedural fluke where the trustee failed to send out a Trustee's Recommendation Concerning Claims pursuant to the local rules that would have alerted the debtor of the non-filed secured claim. This was "outside the ordinary course" of events for a chapter 13 case thus justifying the finding of excusable neglect. *Id.* at *5.

To avail oneself of Rule 9006's deadline enlargement, the debtor must show both cause and excusable neglect if the bar date has already expired when the extension is sought. *See, e.g.*, *In re Moretti*, 260 B.R. 602, 610 (B.A.P. 1st Cir. 2001) ("In addition to excusable neglect, the Debtor must establish that there is cause."); *In re Sprague*, No. 12-41099, 2013 WL 6670576, at *3 (Bankr. D. Idaho Dec. 18, 2013) ("As can be seen, under the Rule, the time for a debtor or a trustee to file a proof of claim on behalf of a creditor under § 501(c) may be enlarged by the bankruptcy court beyond the deadline established in Rule 3004 for 'cause shown' when the 'failure [of the debtor or a trustee] to act was a result of excusable neglect.'"); *In re Gutierrez*, No. 07-10502, 2012 WL 5355964, at *4 (Bankr. D.N.M. Oct. 30, 2012) ("[T]his Court agrees

that 'cause' under rule 9006(b)(1) . . . arguably constitutes a second requirement for enlargement of an expired time period."); *In re Schuster*, 428 B.R. 833, 837 (Bankr. E.D. Wis. 2010) (noting that "if a debtor or trustee fails to file a claim for a creditor within the time provided by Rule 3004, under a literal reading of the Rules, they may request an extension after the fact, if the debtor or trustee can establish cause and demonstrate excusable neglect"); *United States ex rel. U.S. Dept. of Educ. v. Moreu*, 332 B.R. 20, 23 (W.D. Okla. 2005) ("After expiration of the allotted time, the bankruptcy court may grant an enlargement of time if the movant first shows cause and then explains why the movant's negligence is excusable."); *Armstrong v. Trout (In re Trout)*, No. 95-7005, 1995 WL 1943410, at *2 (Bankr. D.N.D. Apr. 25, 1995) ("Rule 9006(b)(1) permits the court to order an extension of time *after* the expiration of the specified period *only* for 'cause shown' and if the failure to act in a timely fashion was the result of 'excusable neglect.'" (emphasis in original)).

## 1.

For the cause element, some courts require that the movant "explain why the party did not seek an enlargement before the deadline expired." *In re Morgan*, No. 18-24459, 2019 WL 548532, at *4 (Bankr. E.D. Wis. Feb. 11, 2019) ("A party seeking to enlarge a deadline that has already expired under Rule 9006(b)(1) must also explain why the party did not seek an enlargement before the deadline expired."). Another court, though, stated that "in most instances 'cause' will exist when there has been a showing of excusable neglect." *In re Gutierrez*, 2012 WL 5355964, at *4. Here, no cause or explanation for missing the deadline has been offered. *See In re Petuck*, No. 12-12791, 2013 WL 2154385, at *5 (Bankr. D.N.H. May 17, 2013) ("No external factors, mistake, or circumstances beyond the control of the parties has been alleged,

much less established. Accordingly, the Court does not find cause under Bankruptcy Rule 9006(b)(1) to extend the date.").

## 2.

The Supreme Court, in *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380 (1993), stated the test for excusable neglect. Excusable neglect is an equitable determination, which considers all relevant circumstances, including "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* at 395. The party seeking to have its late-filed claim deemed timely bears the burden of proving excusable neglect. *See, e.g.*, *In re Enron Corp.*, 419 F.3d 115, 121 (2d Cir. 2005); *In re Nat'l Steel Corp.*, 316 B.R. 510, 515 (Bankr. N.D. Ill. 2004).

"'Excusable neglect' is not easily demonstrated, nor was it intended to be." *Cronin v. Henderson*, 209 F.R.D. 370, 371 (D. Md. 2002) (citing *Thompson v. E.I. DuPont de Nemours & Co.*, 76 F.3d 530, 534 (4th Cir. 1996)). "Debtors especially are cautioned to bear in mind that they will have a heavy burden to meet in order to establish cause and excusable neglect in order to file a claim for a creditor after the deadline imposed by Rule 3004." *In re Duarte*, 146 B.R. 958, 962 n.6 (Bankr. W.D. Tex. 1992).

To decide the excusable neglect question, courts first consider if there was neglect and, if so, whether that neglect was excusable. *In re Mahoney Hawkes*, 272 B.R. 19, 20 (B.A.P. 1st Cir. 2002). Courts in the Fifth Circuit have not elaborated on the meaning of excusable neglect. In the Second Circuit, though, the courts take a "hard line" approach in applying the *Pioneer* test, which "focuses primarily on the reason for the delay, and specifically whether the delay was in

the reasonable control of the movant." *In re Lehman Bros. Holdings Inc.*, 433 B.R. 113, 120 (Bankr. S.D.N.Y. 2010) (claiming that this is a more important factor because the other factors favor the late filer); *see also Dimmitt v. Ockenfels*, 407 F.3d 21, 24 (1st Cir. 2005) (explaining that "among the factors enumerated in *Pioneer*, by far the most critical is the asserted reason for the mistake"); *In re Kmart Corp.*, 381 F.3d 709, 715 (7th Cir. 2004) (noting reason for delay is an "immensely persuasive" factor); *Kretchmer v. Eveden, Inc.*, No. 07-cv-1068, 2009 WL 1939036, at *2 (N.D. Tex. July 2, 2009) (citing authority that the third *Pioneer* factor is perhaps the most important, in the context of Federal Rules of Procedure). Further, in the Second Circuit, the movant "must explain the circumstances surrounding the delay in order to supply the Court with sufficient context to fully and adequately address the reason for delay factor and the ultimate determination of whether equities support the conclusion of excusable neglect." *In re Enron Creditors Recovery Corp.*, 370 B.R. 90, 103 (Bankr. S.D.N.Y. 2007). Additionally, "the equities will rarely if ever favor a party who fails to follow the clear dictates of a court rule, and . . . where the rule is entirely clear . . . a party claiming excusable neglect will, in the ordinary course, lose under the *Pioneer* test." *In re Enron*, 419 F.3d at 123 (quotations omitted); *see also In re Smith*, No. 14-10247, 2015 WL 4627676, at *1 (Bankr. N.D. Tex. July 31, 2015) (finding that even if excusable neglect applied (which it did not in this case), the debtors had failed to satisfy the standard by alleging that their "counsel does not regularly practice bankruptcy law and was simply unaware of the requirement to file [the document at issue]"). Other courts have stated that inattentiveness to the litigation and applicable deadlines is not excusable. *In re Plunkett*, 82 F.3d 738, 742 (7th Cir. 1996); *In re Lyondell Chemical Co.*, 543 B.R. 400, 410 (Bankr. S.D.N.Y. 2016); *see also Pioneer*, 507 U.S. at 392 ("inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect").

8

Whether or not the Fifth Circuit should adopt the Second Circuit's "hard line" approach, "the concept of 'excusable neglect' requires at a minimum an attempt to comply with the Rule and that an excuse be offered." *In re Mmahat*, No. 94-cv-292, 1994 WL 160512, at *6 (E.D. La. Apr. 26, 1994). When there has been no excuse offered, the motion must fail for lack of pleading.

Despite the Debtors' failure to offer an excuse, the Court, to complete the analysis, will address the four *Pioneer* factors. The Debtors will presumably be prejudiced if a secured claim cannot be administered through the chapter 13 plan. While this factor weighs in favor of the Debtors, it alone does not satisfy the standard. *See In re Interra Innovation, Inc.*, 614 B.R. 171, 175 (Bankr. D. Mass. 2020) (stating that while "Rule 9006(b)(1) makes [filing a late claim] subject to extension, after its lapse, for excusable neglect," the prejudice factor "alone does not make otherwise unexcusable conduct excusable"). The Debtors waited almost ten months after the bar date under Rule 3004 had expired to file the claim, despite being on notice of Ally Financial's late-filed claim. This weighs against the Debtors. *See In re Nat'l Steel Corp.*, 316 B.R. at 518 (finding that a creditor in chapter 11 had waited too long, five months, after learning of potential liability to rest on excusable neglect); *but see In re Lyondell Chemical Co.*, 543 B.R. at 411 (stating that "the length of the delay must be evaluated in light of its effect on the administration of the case rather than in absolute terms"). As stated, no excuse or reason for delay has been offered, which weighs in favor of denying the motion. Last, where the court has no reason to question the good faith of the debtors, such factor weighs in their favor. *See Kaplan v. Gruber*, No. 11-cv-3572, 2011 WL 4901347, at *7 (D.N.J. Oct. 13, 2011).

In sum, the Debtors have not alleged cause or excusable neglect. Their motion only states that allowance of the late-filed proof of claim is in the best interest of the estate. But this

is not the standard for enlarging the proof-of-claim bar date under Rule 9006. The Court denies the Debtors' motion to allow the late-filed amended claim of Ally Financial.

<b>B.</b>

Although Ally Financial has not appeared on this motion, the Court addresses its proof of claim, as well, since the relief requested by the motion may be achieved another way. Creditors, both secured and unsecured, must timely file a proof of claim if they wish to receive a distribution under the chapter 13 plan. Rule 3002(c) provides specific exceptions to the rule that creditors must file their proofs of claim not later than 70 days after the case is filed.[5] The Court cannot invoke its discretion on a showing of excusable neglect to extend the bar date for creditors who file claims late in chapter 13 cases. The explicit prohibition to enlarge the filing deadline for creditor-filed claims under Rule 9006 reflects "Congress' intent to create an absolute bar date for filing claims in Chapter 13 cases." *In re Jensen*, 333 B.R. 906, 909 (Bankr. M.D. Fla. 2005).

These rules and guidelines create a quandary, however, where a case has been dismissed and then reinstated. As one court noted, "[m]any of the provisions of the Bankruptcy Code take effect upon commencement of a case. They terminate upon dismissal. It is unclear whether these provisions are resurrected or changed by 'reinstatement' of a case." *In re Noble*, No. 01-37926, 2002 WL 31778056, at *2 (Bankr. S.D. Tex. Sept. 26, 2002). The confusion stems partially from the fact that, despite the common practice of reinstating chapter 13 cases, "there is no provision in the Bankruptcy Code or Rules for reinstatement of a dismissed case"; rather, it is "a judicially created fiction, designed to spare debtors the burden of filing a new case." *In re*

---

[5] *See supra* note 3.

*Murphy*, 493 B.R. 576, 579 (Bankr. D. Colo. 2013). This ambiguity has led several courts to change the Rule 3002 deadlines in light of such disruptions and lack of statutory guidance.

**1.**

Courts have determined that creditors may have extra time to file their proofs of claim when a case has been dismissed and the bar date for filing a proof of claim expired before the case was reinstated. *In re Gil-De la Madrid*, 817 F.3d 371, 374 (1st Cir. 2016) ("If the dismissal has no effect on the calculation of the [seven]ty days, creditors would seemingly have to file their claims during the [seven]ty-day period in *every* dismissed case in order to protect against the remote chance that a case might come back to life long after the [seventieth] day has passed. It is hard to believe that the drafters envisioned Rules 3002, 9006, and 9024 working together in a way that would require creditors to engage in such wasteful activity, especially when the order of dismissal frees creditors to return to their ordinary means of collection." (emphasis in original)); *In re Gulley*, 400 B.R. 529, 539 (Bankr. N.D. Tex. 2009) ("Nevertheless, this court holds that ***where a case is disrupted***, such as through a stay or dismissal, and a proof of claim deadline runs prior to the reinstatement of the case, a court has the power to nullify the original proof of claim deadline and recalculate it. To hold otherwise offends notions of due process, but also invites mischief or the barrage of prophylactic filings." (emphasis in original)).

The First Circuit offered two bases for enabling a creditor to file a claim when the bar date has passed during the pendency of a case dismissal. The first is under an equitable-tolling-like theory, where the days in which the debtor's case is dismissed should not be counted towards the seventy-day filing period. "Indeed one could read the bankruptcy rules as inoperative during a case's dismissal, for parties should not be routinely expected—especially without clear statutory or court-issued notice—to treat a dismissed case as still active." *In re*

*Gil-De la Madrid*, 817 F.3d at 375; *but see Gardenhire v. IRS (In re Gardenhire)*, 209 F.3d 1145, 1152 (9th Cir. 2000) (finding that an IRS claim filed 11 days after the deadline could not be allowed under a theory of equitable tolling where the case had been dismissed and then reinstated with 14 days left on the 180-day deadline for government entities). The second possibility, according to the First Circuit, is that the court may exercise its equitable rights under § 105(a) to set a new bar date; "this way, the bankruptcy court could account for the anomaly." *In re Gil-De la Madrid*, 817 F.3d at 375. While the First Circuit in *Gil-De la Madrid* explicitly stated that their decision did not address what happens when dismissal is reversed before the seventieth day has passed, the principles of that decision apply to a case where it is reinstated before the bar date has passed.

Fifth Circuit case law also supports recalculating immutable time periods fixed by the Rules when there has been a significant disruption in a case. In *Coston*, the Fifth Circuit upheld a bankruptcy court's nullification and resetting of deadlines under Rule 4007 (which sets deadlines for dischargeability complaints under § 523(c)), where a chapter 7 case had been stayed. *Coston v. Bank of Malvern (In re Coston)*, 987 F.2d 1096 (5th Cir. 1992) (an involuntary petition was filed against the debtors in Arkansas, and the next day the debtors filed a petition in Texas; the Texas case was stayed until the Arkansas court determined proper venue). The Circuit determined that the new date set for the § 341 meeting, after the first meeting was cancelled because of the stay, was the "'first date' under Rule 4007" and was "not merely a rescheduling of the old pre-stay date." *Id.* at 1099. The court noted that while it may appear that such a conclusion contradicts the working of Rule 4007, no other result was sensible or possible. *Id.* ("The Bank cannot be penalized because it did not comply with a filing deadline of a court whose proceedings had been stayed. To suggest that[,] even though the court's proceedings in

the [debtors'] case had been stayed under Rule 1014(b), its filing deadline under Rule 4007(c) continued to run is ludicrous.").  In another case, the Fifth Circuit extended the *Coston* decision to cases that had been dismissed and then subsequently reinstated where the § 341 meeting had been scheduled, but not held, and the deadline to file objections to discharge expired while the case was dismissed.  *In re Dunlap*, 217 F.3d 311 (5th Cir. 2000).  The Fifth Circuit rejected the debtor's argument that the first date set for the meeting of creditors determined the time in which creditors could file their objections, predicting that such a determination "would precipitate a barrage of prophylactic filings in all cases dismissed before the complaint deadline, and would thus burden both creditors and the courts with unnecessary expense and effort."  *Id.* at 315. Instead, to preserve the integrity of the time period, the court determined that "[r]esetting the meeting of creditors and the complaint filing deadline" was appropriate.  *Id.* at 316 (rejecting an equitable tolling remedy because "there is no provision for a tolling regime found in the relevant portions of the Bankruptcy Code or Rules" and tolling "fails to comport with the purpose of Rule 4007(c), namely to establish a 'fixed, relatively short limitation period' for creditors to act after the section 341 meeting").

Although the Fifth Circuit addressed this ability to reset the deadline in the context of Rule 4007 (and relatedly 4004),[6] the policy considerations apply equally to Rule 3002.  Both Rules are explicitly prohibited from expansion for excusable neglect under Rule 9006 and limit enlargement to the specific exceptions listed in each respective rule.  Despite the clear language in the Rules, the Fifth Circuit "held that the 'first date set' for a creditors meeting does not mean the date set in the first notice if circumstances (like dismissal or an order of abatement) occur that prevent a creditor from filing a timely complaint objecting to discharge."  *In re Crawford*,

---

[6] Rule 4007 concerns complaints filed objecting to the dischargeability of a particular debt, and Rule 4004 concerns complaints objecting to the discharge of all debts.

347 B.R. 42, 48 (Bankr. S.D. Tex. 2006) (extending *Dunlap* to Rule 4004). Additionally, the reasoning and ultimate deadline extension in *Dunlap* has been applied to Rule 3002 proofs of claim in the Northern District of Texas. *In re Gulley*, 400 B.R. at 535 (looking to *Dunlap* to determine what kind of "'extenuating circumstances' . . . might permit the altering of the hard deadlines referred to in Rule 9006").[7]

Extension of the bar date has not been addressed when a case is reinstated prior to the bar date. One court, though, found that *Dunlap* did not apply to recalculate an objection-to-discharge deadline when the bar date passed *prior* to the case being dismissed. *In re Avalos*, 361 B.R. 129, 133 (Bankr. S.D. Tex. 2007) (distinguishing this case from *Dunlap* because "the creditors had a full 60-day window in which to file objections to discharge"). This makes sense as the creditor was afforded the same amount of time to file an objection.

Here, the case was dismissed for 52 of the 70 days allowed for filing a proof of claim; this creates a potential due process issue. Given this disruption, the Court will thus nullify the original deadline for Ally Financial's proof of claim. "[B]ankruptcy courts have the power to ***nullify original case deadlines and recalculate them*** when there has been the extenuating circumstance of ***disruption of a case*** (*e.g.*, when there has been a stay in or a dismissal of a case), but bankruptcy courts do not have the power to extend or toll deadlines generally on any equitable grounds." *In re Gulley*, 400 B.R. at 535 (emphasis in original).

---

[7] *But see In re Robert*, 171 B.R. 881, 883 (Bankr. N.D. Cal. 1994) (finding that the new hearing date of the § 341 meeting for a chapter 13 case, issued after the case was dismissed and then reinstated, did not create a new proof of claim deadline). This case is distinguishable because it was decided before courts generally determined that secured creditors had to file proofs of claim to receive distributions under a chapter 13 plan, making the case's reasoning out of date, as well as the fact that the case was dismissed for only 14 days for the attorney's failure to appear at the § 341 meeting.

**2.**

Nullifying and recalculating the claims bar date here supports public policy by upholding the principles of the Bankruptcy Code, adhering to the purposes behind the limitation and procedural protection of Rule 3002(c), and providing a consistent effect of pre-discharge dismissal.

Rule 3002 supports two separate policy objectives. The first is that Rule 3002(c)'s claims bar date is meant "to provide the debtor and its creditors with finality," *In re Johnson*, 84 B.R. 492, 494 (Bankr. N.D. Ohio 1988), and the second is to "insure the swift distribution of the bankruptcy estate." *In re Good News Publishers, Inc.*, 33 B.R. 125, 126 (M.D. Tenn. 1983). The time limit in Rule 3002, though, is also meant to define the amount of process necessary to sufficiently protect the rights of creditors by prescribing the amount of time afforded to a creditor to assert a claim in order to participate in the bankruptcy case. *See Burkart v. Williamson*, No. 08-cv-0678, 2009 WL 812075, at *2 (N.D. Tex. Mar. 26, 2009) ("The bankruptcy rules are procedural rules designed to *protect* the due process rights of individuals." (emphasis in original)); Russell A. Eisenberg & Frances Gecker, *Due Process and Bankruptcy: A Contradiction in Terms?*, 10 Bankr. Dev. J. 47, 51 n.13 (1993) ("Much like the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure provide specific procedures meant to ensure that an individual's due process rights are protected within bankruptcy proceedings."); Joseph Pace, *Bankruptcy as Constitutional Property: Using Statutory Entitlement Theory to Abrogate State Sovereign Immunity*, 119 Yale L.J. 1568, 1622 (2010) (stating that unlike other areas of the law, the appropriate amount of due process "is the procedure embodied in the Bankruptcy Code itself"). These purposes are jointly achieved in typical chapter 13 cases, but when there has been a dismissal and subsequent reinstatement of the case during the pendency of

the time allotted for filing claims, the purposes of the rule are compromised. If a court nullifies the original date and recalculates it based on the anomaly of a dismissal and reinstatement, the impact on the finality and swift distribution of the estate is immaterial, while the prejudice to a creditor if the period continues to run during dismissal can be significant.[8] Recalculating the deadline to file proofs of claim under Rule 3002 when there has been a significant interruption is a more faithful application of the intended purposes of Rule 3002.

To ensure the consistent effect of a case dismissal, the deadline to file proofs of claim prior to the dismissal should not continue to run during the dismissal period. This is because when a case has been dismissed, "[u]nder 11 U.S.C. § 349(b), 'the pre-discharge dismissal of a bankruptcy case returns the parties to the positions they were in *before* the case was initiated.'" *In re Oparaji*, 698 F.3d 231, 238 (5th Cir. 2012) (quoting *In re Sanitate*, 415 B.R. 98, 104 (Bankr. E.D. Pa. 2009)) (emphasis in original). This return to pre-bankruptcy rights enables creditors to resume debt collection and other acts to protect their interests; if a case is later reinstated, enforcement of those rights during dismissal is not retroactively altered because of a subsequent reinstatement. For example, when a chapter 13 case is dismissed and later reinstated, and a secured creditor has taken action against a debtor's property prior to reinstatement, the automatic stay is not retroactively applied to undo the creditor's actions. *In re Frank*, 254 B.R. 368, 374 (Bankr. S.D. Tex. 2000) (rejecting the argument that because a dismissal has been vacated, all of the consequences of that dismissal were terminated). A court's refusal, upon reinstatement of a dismissed case, to retroactively re-impose the automatic stay against creditors

---

[8] *In re Kolstad*, 928 F.2d 171, 174 (5th Cir. 1991) (stating that proof of claim "bar dates establish the universe of participants in the debtor's case"); *In re Armstrong*, No. 16-00640, 2017 WL 1030720, at *1 (Bankr. D.D.C. Mar. 15, 2017) (denying a debtor's motion to vacate dismissal of her chapter 13 case in part because "creditors might have to scramble to get their proofs of claim filed within less than a month" which "could be prejudicial to creditors").

back to the date the case was dismissed is meant "to balance the rights of both the debtor and the creditors." *In re Murphy*, 493 B.R. at 580.

Just as the automatic stay terminates when a case is dismissed, the running of the time to file proofs of claim should also stop. Because reinstatement of the chapter 13 case is a judicially created remedy that benefits the debtor—primarily by "avoiding beginning a new five-year plan and incurring the legal expenses associated with the confirmation process"—such remedy should not also impair the due process rights of creditors. *Id*. at 582. Severely reducing the time that creditors have to file claims—as a result of the case's dismissal—in order to participate in a bankruptcy case is unfair.

Nullifying and recalculating the deadline date under circumstances similar to those here is an appropriate way to not only balance the rights of both the debtors and creditors but also to uphold the purposes underlying Rule 3002. It protects the principles and integrity of the bankruptcy system by allowing creditors their allotted time under the Rules to file their proofs of claim. It avoids unnecessary filings and promotes certainty by ensuring creditors that they will be allotted sufficient time to file their claims.

Here, the case was dismissed for over 50 days and was reinstated with no more than eleven days left for Ally Financial to timely file its claim. Ally Financial filed its claim one day after the original bar date.

The Court nullifies the bar date and determines that Ally Financial's proof of claim was timely filed.

## III.

The Court denies the Debtors' motion. The Debtors failed to plead or offer any reason, much less excusable neglect, that would allow the Court to deem their late-filed claim as timely under Rule 9006. Some explanation must be provided to qualify for such consideration.

For the reasons stated, the Court will, however, allow Ally Financial's proof of claim as if timely filed.

### End of Memorandum Opinion ###